JOHN J. CHENOT, appellant, v. CHARLES H. LEFEVRE, appellee.

*Appeal from St. Clair.*

Before the Statute of Limitations will constitute a bar to an action of *debt,* the defendant must be a resident of the State for sixteen years after the cause of action accrues, and before the suit is brought. Should the defendant remove from the State, and afterwards return again to reside, the time of the absence would not be reckoned as a part of the sixteen years.

In an action of *debt,* a replication to a plea alleging that the defendant did "undertake and promise" is bad.

Where a note is given to a person by a name other than his real name, he may aver in his declaration that the note was given to him by the name specified in the note; but he must prove to the satisfaction of the jury, that he was the person intended as the payee.

The term *"prescription,"* as used in the Code Napoleon, is synonymous with the term *"limitation"* in the English Law.

The law of France in regard to prescription, before it can be given in evidence, must be specially pleaded in suits brought in this country upon instruments made and executed in the former.

In an action of *debt,* the jury rendered a verdict for more damages than were claimed, and in the Supreme Court, the party offered to remit the excess, but the Court refused to allow him to do so.

DEBT, in the St. Clair Circuit Court, brought by the appellee against the appellant, and heard before the Hon. Gustavus P. Koerner, and a jury, when a verdict was rendered in favor of the defendant below for $250·68 debt, and· 256·77 damages.

The various pleadings, instructions asked and evidence offered in the case at the trial in the Court below, will sufficiently appear in the Opinion of the Court.

*L. Trumbull,* for the appellant.

*W. H. Underwood,* for the appellee.

The Opinion of the Court was delivered by

CATON, J. This was an action of *debt,* brought by the present defendant against the present plaintiff in the Circuit Court of St. Clair county. The first count is upon a promissory note, dated at Phalsburg, January 1st, 1828, for twelve

hundred francs, at six per cent. interest, payable to the said plaintiff by the name and description of "Mr. Hoffman Lefevre," and executed by the defendant by the name of "Chenot."

The second count is on a note dated at Phalsburg, on the 16th of May, 1830, for the sum of one hundred and thirty seven francs and seventy five centims, payable to the plaintiff by the description of "Mr. Ch. Hoffman son," and executed by the defendant by the name of "Chenot," also bearing interest at six per cent. per annum.

The third count is on a note dated at Phalsburg, January 1st, 1828, for the sum of twelve hundred francs, with interest at six per cent. payable to the plaintiff by the name and description of "Mr. Hoffman Lefevre," and signed by the defendant by the name of "Chenot."

The fourth count is on a note dated at the same place, on the sixteenth May, 1830, for the sum of one hundred and thirty seven francs and seventy five centims, and payable to the said plaintiff by the description of "Mr. Ch. Hoffman son," and executed by the said defendant in the same way as all of the others.

The fifth count is for goods sold and for money paid and money lent, &c.

The defendant filed the general issue and eight special pleas, each applicable to one or more of the counts in the declaration. To each of the special pleas, the plaintiff, by leave of the Court, filed two replications; but in this volume of special pleading, it is only necessary to notice the replications to the fifth, sixth, and ninth pleas, as it is assigned for error that the Court improperly overruled demurrers to those replications. The fifth is a plea of the Statute of Limitations to the third count, and the sixth is a similar plea to the fifth count. The first replications to each of these pleas are alike. These replications state, in substance, that the defendant was out of the State when the cause of action accrued, "and has not during the last sixteen years next before the commencement of this suit lived and continued to live in the State of Illinois."

The thirteenth section of our Statute of Limitations provides: "If any person or persons, against whom there is or shall be any cause of action, as is specified in the preceding sections of this chapter, except real or possessory actions, shall be out of this State at the time of the cause of such action accruing, or any time during which a suit might be sustained on such cause of action, then the person or persons who shall be entitled to such action, shall be at liberty to bring the same against such person or persons, after his, her or their return to this State, and the time of such person's absence shall not be accounted or taken as a part of the time limited by this chapter." This statute is peculiar, and provides that the defendant must reside in the State sixteen years after the cause of action accrues, and before the suit is brought, before the limitation constitutes a bar. It is true that the presumption of law is, that the defendant has resided in this State ever since the cause of action accrued, so that it is sufficient for the defendant to plead, that more than sixteen years have elapsed since the cause of action accrued, and if the plaintiff would avoid this, it is necessary to show in his replication that the defendant has not resided in this State, all together, sixteen years since the cause of action accrued. This, these replications do not show. They merely state that the defendant resided out of the State at the time the cause of action accrued, and has not resided and continued to reside in this State for the last sixteen years before the commencement of the suit, and from aught that appears in these replications, the defendant may have resided more than sixteen years in the State between the accruing of the cause of action and the commencement of the suit. From the peculiar phraseology of this statute, we are of opinion that, although the Statute of Limitations might have commenced running more than sixteen years before the commencement of the suit, yet it might be arrested at any time, and as often as the defendant removed from the State, and would commence running at any time upon his becoming a resident of the State again. The demurrer should have been sustained to these two replications.

The second replication to the fifth plea is also bad. It states "that the said defendant did, within sixteen years next before the commencement of this suit, *undertake* and *promise* to pay to the said plaintiff the said sum of money," &c. Had the action been *assumpsit,* this would have been a good replication. The proper replication, of this nature, to a plea of the Statute of Limitations in an action of debt is, that "the cause of action did accrue to the said plaintiff within sixteen years next before the commencement of this suit," &c. 1 Chitty's Pl. 614. It is true that none of these defects are pointed out by the special causes assigned in the demurrer, and probably the attention of the Court was not called to them; but, still, they are of a substantial character, and are reached by the general demurrer.

The ninth plea is to the four first counts of the declaration, and avers that, by the laws of France, notes, as described in those counts, were void, if they were not stamped, and that these were not stamped. An amended replication was filed to this plea, which gave two good answers to it: first, that, by the laws of France, they were not required to be stamped; and, second, that they were stamped. A demurrer was sustained to this replication, and the plaintiff had leave to amend by making two replications of it, which amendment was made. Demurrer was again filed and overruled by the Court, and this is assigned for error. As the two replications which were made from the case are not copied into the record, we cannot say that they were liable to any objection, and they probably were not.

On the trial, the plaintiff offered in evidence two notes, as described in the second and third counts of the declaration, in the French language, and proved a translation. The plaintiff then offered in evidence Art. 1326 of the Code Napoleon, providing for the mode of executing paper of this character, and proved a translation, which it is unnecessary here to recite. He also proved the value of a franc and of seventy five centimes, and that Phalsburg was in the kingdom of France. Here the plaintiff rested his case.

The defendant then offered in evidence, from the Code

Napoleon, which he proved to be the law of France, Art. 2277, with the following translation:

"The interest of money lent, and generally all that becomes payable from year to year, or at shorter times, is prescribed by the lapse of five years."

He also offered in evidence from the same Code, Art. 2224, with the following translation:

"The plea of limitation may be opposed in any state of the case, even before the Court of Appeals."

All the foregoing laws, together with the notes, are introduced into the bill of exceptions in the French language as well as in the English translation. To the introduction of these laws as evidence the plaintiff objected, and the Court sustained the objection.

The plaintiff then proved that the defendant left France in 1830, and came to Illinois between five and six years ago. The witness stated "that he knew Mr. Charles Hoffman Lefevre; that he resided at Phalsburg, in the kingdom of France, and had always resided there." Here the case was closed on both sides.

The defendant requested the Court to give two instructions to the jury, the second of which it is only necessary to notice, which is as follows:

"If the jury believe from the evidence, that the notes offered in evidence are payable to a person of a different name from that of the plaintiff, and that there has been no testimony before them showing that the plaintiff was the person intended, they must find for the defendant."

This instruction the Court refused to give. In this the Court erred. Where a note is given to a person by a name other than his real name, he may aver in the declaration that the note was given to him by the name as specified in the note; but then it is necessary to prove to the satisfaction of the jury, that he was the person intended as the payee. That is an allegation that requires to be established by the proof as much as any other material allegation in the declaration, and is not established by the mere fact that the plaintiff has possession of the note. It is probable that

where the initial of the given name is only given in the note, that the bare possession of the note would be sufficient to entitle him to recover, where there was no suspicion otherwise in the case; but where the name is another than that of the plaintiff, extraneous evidence of the identity must be produced.  Chitty on Bills, 625.

The Court properly excluded the evidence offered of the law of France, as contained in the 2277th Art. of the Code of Napoleon, providing that the interest of money lent, and generally all that becomes payable from year to year, or at shorter times, is prescribed by the lapse of five years, as well as Art. 2224, providing that the plea of limitation may be offered in any stage of the case, even before the Court of Appeals.  The terms "prescribe" and "prescription" in French, seem to be synonymous with the English words, to "limit" and "limitation."  Prescription is the term used in the Louisiana Reports for limitation, and in the translation of Pothier on Obligations, Vol. 1, 350, in the chapter on limitations, prescription is always used for limitation.  This law of France, then, we take it *ex vi termini* is a statute of limitation of a peculiar character, and only prevents the recovery of the interest, exceeding a certain amount, and then only when specially interposed.  Like all other statutes of limitations, it must be specially pleaded, and consequently, a plea presenting this peculiar defence under the French statute should have been framed, even admitting that this defence can be urged at all, of which we are by no means satisfied.  The time within which a remedy must be enforced is no part of the contract, but it is to be governed solely by the *lex fori*. At any rate, a plea setting out the French law, and presenting this partial defence, ought to have been framed, otherwise the plaintiff might have been taken by surprise.  With the proper notice, he might have been able to have produced some other portion of the French law, showing his case to have been an exception to this general rule.  It was said that no precedent for such a plea can be found.  That may be so, and still not be very remarkable, for statutes are constantly giving rise to the necessity of new and peculiar pleas.

Chenot *v.* Lefevre.

Indeed, it seems by the very law offered in evidence by the defendant, that this defence must be interposed by plea even in France, for Article 2224 says, "the plea of limitation may be interposed," &c., and it may be here remarked, that the same word which is translated in Article 2277 "prescribe," in this article is rendered "limitation." It cannot be reasonably understood that this limitation can be interposed in any stage of the proceeding, without notice to the opposite party. The practice under the civil law requires the claim or defence to be set out in writing with much particularity, according to the facts of the case. But be that as it may, the manner of stating a demand or defence must necessarily be governed by the practice of the Court or country where the claim is attempted to be enforced or the defence made, and is no part of the contract. Under our practice, nothing can be introduced on the trial unless a foundation is laid for it in the pleadings. What may be introduced under the general issue is well understood by all, and with proper attention no surprise can ensue under that plea. In rejecting this evidence the Court decided properly.

The jury returned a verdict for more damages than were claimed in the declaration, for which a judgment was rendered. In order to cure this error, the plaintiff has asked leave to remit this excess of damages. This we are not disposed to allow, although we will not say that we have not the power to do it. But even if this were allowed, it would only be done upon the payment of the costs of the appeal.

The judgment of the Circuit Court is reversed with costs, and the cause remanded for a new trial.

*Judgment reversed.*